IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BOBBIE JENKINS, *for RB*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 2:08cv578 -WC |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Bobbie Jenkins ("Plaintiff") applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (2000), on behalf of her son, R.B. ("Claimant"), alleging he was disabled. Plaintiff's application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (the Commissioner).[1] See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review pursuant to 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. §

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

636©), both parties have consented to the conduct of all proceedings and entry of a final

judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction

(Doc. #19); Def.'s Consent to Jurisdiction (Doc. #18).  Based on the Court's review of the

record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.     STANDARD FOR CHILDHOOD DISABILITY

Under 42 U.S.C. § 1382c(a)(3)(C)(I), a person under the age of 18 is disabled (and

hence entitled to disability benefits) if the person "has a medically determinable physical or

mental impairment, which results in marked and severe functional limitations, and which can

be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."[2]  In determining whether a child is disabled, the

Commissioner employs the following three-step sequential evaluation process.  See 20

C.F.R. § 416.924 (2007).

(1) Is the person presently not engaged in substantial gainful activity?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific
impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of
Impairments"), and also meet the twelve-month duration requirement?[3]

------

[2]A "physical or mental impairment" is one resulting from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically
acceptable clinical and laboratory diagnostic techniques.

[3]Part A of the Listing of Impairments applies to children and adults; Part B applies
to children only.  In dealing with a child's case, the Commissioner looks first to Part B,
then to Part A.  20 C.F.R. § 416.925(b); Wilkinson v. Bowen, 847 F.2d 660, 661 (11th
Cir. 1987).

If the answer to each of the three questions is "yes," then the child is entitled to benefits.

In order for a severe impairment to meet or equal one of the listed impairments, the impairment must "cause[] marked and severe functional limitations" for the child claimant. 20 C.F.R. § 416.911(b).

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations meet[], medically equal[], or functionally equal[] the [L]istings. A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations are at least of equal medical significance to those of a listed impairment.

Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (internal quotations and citations omitted). Even if the child's impairment does not meet or medically equal a listing, it may still functionally equal a listing. In assessing functional equivalence, the ALJ considers the "degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (I) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for [one]self; and
> (vi) Health and physical well-being."

Id. at 1279. "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A

3

child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).  A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I).   An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

### III.   SCOPE OF REVIEW

The standard of review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead, must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

> [The Court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions,

including determination of the proper standards to be applied in evaluating claims.

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

## IV.   ADMINISTRATIVE PROCEEDINGS

The claimant was nearly twelve years old at the time of the hearing before the ALJ. Tr. 17.  Following the administrative hearing, the ALJ found the claimant had not engaged in substantial gainful activity at any time during the period under adjudication (Step 1).  Tr. 17.  The ALJ also found the claimant had two severe impairments under Step 2: borderline intellectual functioning and asthma.  Tr. at 18.  Nonetheless, the ALJ concluded that these impairments do not meet or equal in severity the criteria for any impairment in the Listing of Impairments, and that the claimant did not have an "extreme" limitation in any areas of functioning or "marked" limitation in two areas of functioning.  Tr. 17-25.  Consequently, the ALJ found the claimant was not disabled.  Tr. 25.

## V.   PLAINTIFF'S CLAIMS

Plaintiff presents four issues for review:  (1) whether the final decision of the Commissioner denying benefits is supported by substantial evidence; 2) whether the Commissioner erred as a matter of law in failing to accord adequate weight to the opinion of Dr. David Monsky, the claimant's "treating source;" 3) whether the Commissioner erred as a matter of law in evaluating the severity of the claimant's learning disability; and 4) whether the ALJ erred as a matter of law in failing to seek further medical review, and thus

failing to fully and adequately develop the record.  <u>See</u> Pl.'s Brief (Doc. #10) at 1.

## VI.   ANALYSIS

    **1.   Whether the Commissioner's treatment of the opinions of the claimant's treating sources, teacher, and mother deprive his final decision of the support of substantial evidence.**

Plaintiff contends that, in denying benefits, the ALJ used "improper legal standards [and] . . . . failed to show good cause why the opinion of the claimant's treating sources, his teachers[,] and his mother should not be given substantial or considerable weight."  Pl.'s Brief (Doc. #10) at 3.  Thus, Plaintiff asserts that the ALJ's decision to give greater weight to state DDS examiners, rather than the claimant's "treating sources," teachers, and mother, deprives the ALJ's decision of the support of substantial evidence.  Defendant maintains that the ALJ properly evaluated the record evidence and gave appropriate deference to both the opinion of the claimant's true treating source and the state agency physicians who also rendered opinions.

Plaintiff does not explain how the ALJ failed to give appropriate weight to the claimant's "treating sources" or his mother and teachers.  Plaintiff also fails to tie this purported failure of the ALJ to proof of a particular impairment alleged by Plaintiff.  Further, Plaintiff fails to point to any objective evidence in the record which illustrates that the ALJ's finding that the claimant is not disabled is not supported by substantial evidence.  Thus, apprehending the essence of Plaintiff's claim is somewhat difficult.

In any event, it is first appropriate to disabuse Plaintiff of the notion that the claimant has multiple "treating sources." The only treating source revealed in the records is Dr. Bernardo. See Pettus v. Astrue, 226 Fed. App'x 946, 949 (11th Cir. 2007) ("A treating source is defined as the claimant's own physician or psychologist who has provided the claimant with medical treatment and evaluation, and who has had an ongoing relationship with the claimant."). It does not appear that the claimant maintained an ongoing relationship with Dr. Monsky or his clinic, as he was referred to Dr. Monsky's clinic for a one-time evaluation. (Tr. 109). Likewise, the claimant was referred to Linda Weems for a one-time "Individual Intellectual Achievement" evaluation by his school. (Tr. 83). Thus, the ALJ was not required to consider the opinions rendered by Dr. Monsky's clinic or Ms. Weems as those of treating sources. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of one-time examiners "are not entitled to [treating source] deference because as one-time examiners they were not treating physicians.").

Dr. Bernardo never opined that the claimant's mental functioning or asthma rendered him disabled. As the ALJ found (Tr. 18-20, 25), Dr. Bernardo's treatment notes reveal that his asthma was controlled with prescribed medication. (Tr. 159, 161). Plaintiff does not point to any evidence - whether objective medical, anecdotal, or purely subjective - that refutes the ALJ's findings with respect to the claimant's asthma. Thus, it is apparent that the ALJ properly considered Plaintiff's treating source opinion in making his disability determination.

With respect to the ALJ's treatment of the opinions of the claimant's mother and teachers, Plaintiff has again failed to demonstrate reversible error by the ALJ. The ALJ was only obligated to consider these subjective, non-medical source opinions to the extent they were credible and consistent with objective evidence in the record. <u>See, e.g.</u>, 20 C.F.R. § 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ."); <u>see also</u> SSR 06-03p ("Information from these 'other sources' [including, explicitly, school teachers] cannot establish the existence of a medically determinable impairment. Instead there must be evidence from an 'acceptable medical source' for this purpose."). The ALJ meticulously reviewed the teacher questionnaire completed by Mrs. Beachem and, where appropriate, relied upon her observations.[4] However, to the extent Mrs. Beachem's observations about claimant's "serious" or "very serious" problems in "Acquiring and Using Information" or "Attending to and Completing Tasks" are undermined by objective testing in the record and evidence of the claimant's daily activities, the ALJ rightfully did not defer entirely to Mrs. Beachem's observations. Thus, evidence in the record that the claimant's intelligence quotient and "cognitive ability" tested as high as the average range (Tr. 83, 87) dulled the impact of Mrs. Beachem's subjective

---

[4]    For instance, given Mrs. Beachem's observations about the claimant's "serious" and "very serious" problems in areas related to "Attending to and Completing Tasks," the ALJ found that the claimant suffers "marked limitation" in that domain of functioning.  (Tr. 22).

observations about the severity of his "problems" with certain activities encompassed by the given domains.  Likewise, evidence of the claimant's daily activities, including that he plays computer games, is responsible for feeding the family dog, keeps busy on his own, works on arts and craft projects, completes his homework, and likes to work on his bicycle (Tr. 83, 73, 109) diminishes the severity of the "problems" observed by Mrs. Beachem in certain functional areas.  Thus, the ALJ gave appropriate weight and consideration to the non-medical opinion of the claimant's teacher in assessing the severity of the claimant's impairments.

Regarding the ALJ's treatment of the opinion expressed by the claimant's mother, the ALJ properly took note of her testimony at the hearing and her observations recorded at other points in the record.  However, for the reasons given above, the ALJ properly gave only limited weight to her subjective observations given the weight of available objective medical evidence and her own observations about the claimant's daily activities.

Finally, to the extent Plaintiff faults the ALJ for giving "more weight to a DDS examiner who simply reviewed the patient file than the Plaintiff's treating sources, school teachers and his own mother," Pl.'s Brief (Doc. #10 at 3-4), Plaintiff has failed to demonstrate error.  The ALJ was required to consider the state agency's Childhood Disability Evaluation Form (Tr. 151-157) as expert opinion from a non-examining source, see SSR 96-6p, and did so accordingly.  (Tr. 21).  Further, as demonstrated above, the ALJ did not improperly elevate the state agency examiner's opinion above that of Plaintiff's treating

source, Dr. Bernardo.   Rather, Dr. Bernardo simply did not render any opinion which

conflicts with the findings of the state agency.   Thus, the ALJ did not err in relying upon the

state agency disability evaluation and his decision that claimant is not disabled is supported

by substantial evidence.

## 2.      Whether the Commissioner erred in failing to accord adequate weight to the opinion of Dr. Monsky.

Plaintiff appears to claim that the ALJ improperly "excluded from evidence" the

opinion of the clinicians at Dr. Monsky's clinic, did not inquire into the factual basis for the

opinion, and provided no reason for discounting such "treating source" opinion.  Pl.'s Brief

(Doc. #10 at 4-5).  Defendant maintains that the ALJ properly considered the opinion and

that his ultimate findings do not conflict with the opinion in pertinent aspects.

As discussed above, Dr. Monsky's clinic was not a treating source.  Plaintiff visited

the clinic one time on a referral basis.  Such is simply not sufficient to establish an ongoing

treatment relationship.  See McSwain, 814 F.2d at 619.  Nevertheless, even if Dr. Monsky's

clinic were considered a treating source, the ALJ's findings do not conflict with the opinion

rendered by the clinic such that the ALJ can be said to have improperly substituted his

judgment for that of the treating source.  First, it must be noted that Plaintiff points to no

specific finding in the Monsky clinic's opinion which was purportedly ignored by the ALJ.

Rather, it is apparent the ALJ concurred with the Monsky clinic's assessment that the

claimant suffers borderline intellectual functioning and deemed the condition a severe

impairment.  (Tr. 17).  However, it is the ALJ's responsibility to determine disability, and nothing in the Monsky clinic's opinion suggests a finding that Plaintiff's intellectual functioning renders him disabled.  Indeed, the Monsky clinic's ultimate opinion appears to be that the claimant's achievement scores do not correspond with predictions based on his assessed abilities, and that, therefore, the claimant "would benefit from interventions aimed at improving these skills at home and at school."  (Tr. 112).  A finding that the claimant is not performing at a level commensurate with his abilities and that he is a candidate for improvement with appropriate "intervention" simply does not dictate a finding of disability. Accordingly, the ALJ did not err in his treatment of the opinion rendered by the Monsky clinic.

3.      **Whether the Commissioner erred as a matter of law in evaluating the severity of Plaintiff's learning disability.**

Plaintiff appears to claim that the claimant's learning disability is so severe that it "functionally equals" the listing and that the ALJ substituted his own "hunch or intuition for the diagnosis of a psychiatrist" in concluding otherwise.  Pl.'s Brief (Doc. #10) at 5-6. Plaintiff cites to no medical evidence establishing that his impairment meets or functionally equals a listing in the listing of impairments.  Rather, he relies upon Mrs. Beachem's teacher questionnaire and her comment that she provides additional help to the claimant for "all of the reading activities as well as tests."  (Tr. 92).  Defendant maintains that the ALJ properly determined that the claimant's impairment of borderline intellectual functioning does not

meet or functionally equal a listing.

It is evident from the record that the claimant's impairment does not meet or medically equal the listing for Mental Retardation, (Listing 112.05).  As the ALJ noted, and Plaintiff does not refute, the claimant's performance on IQ tests do not fall withing the range mandated by Listing 112.05.  (Tr. 18).  Regarding functional equivalence, the Court first notes that Plaintiff fails to identify in which domain(s) the claimant's functioning is so limited that Plaintiff believes the impairment functionally equals the listing.  Plaintiff's reliance on Mrs. Beachem's completion of the questionnaire, and her commentary on one part of the questionnaire, suggests that Plaintiff believes the ALJ erred in his assessment of only "marked" limitations to the claimant's functioning in the domain of Attending to and Completing Tasks.  However, as discussed above, the anecdotal evidence provided by Mrs. Beachem was balanced by other evidence of the claimant's daily activities and task-oriented functioning, including that he does arts and crafts, keeps himself occupied, is responsible for feeding the dog, completes his homework, and likes to work on his bicycle.  (Tr. 83, 73, 109). Thus, substantial evidence, that is, more than a scintilla even if less than a preponderance, supports the ALJ's determination that Planitiff's functioning in the domain of Attending to and Completing Tasks is only markedly limited.  Plaintiff's claim that the ALJ reversibly erred in failing to find that claimant's impairment functionally equals the listing is without merit.

    **4.**    **Whether the ALJ erred as a matter of law in failing to seek further medical review and thus failing to fully and adequately develop the**

**record.**

Plaintiff asserts that the ALJ "erred in failing to seek a Consultative Exam which included an IQ section and in failing to have a Medical Examiner provide testimony at the hearing . . . ." Pl.'s Brief (Doc. #10) at 6. Plaintiff also claims that the IQ testing conducted by the Monsky clinic was too aged at the time of the ruling in this case under federal regulations. Defendant maintains that the ALJ had before him sufficient medical evidence to assess the claimant's disability status, and that any perceived lack of evidence stems from Plaintiff's failure to sustain her burden of proving disability.

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). As noted above, the ALJ had sufficient evidence before him to accurately assess the claimant's disability status.[5] The ALJ had before him numerous sources of evidence, including lay observations, expert opinion, and testing data, all of which he evaluated in reaching his decision. (Tr. 17-18, 20-25). Thus, further development of the

---

[5]     The ALJ was clearly cognizant of his duty to further develop the record, where appropriate. For example, the ALJ attempted to collect hospital records pertaining to the claimant's asthma but found that such records were unavailable. (Tr. 20). Thus, the ALJ was not inattentive to his duty to develop the record.

record, including ordering a consultative examination and additional IQ testing was not necessary.

Plaintiff's allegation that the age of the claimant's IQ tests rendered them unreliable for purposes of the ALJ's disability determination is also unavailing.  The IQ scores, rendered in March of 2005, were valid and current at the time of the hearing before the ALJ. Moreover, Plaintiff has not alleged that the claimant's IQ appreciably changed in the period between the hearing and the ALJ's rendering of his decision.  Thus, the scores were sufficiently current to permit the ALJ to assess Plaintiff's disability.

## IV.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED for further proceedings consistent with this opinion.  A separate order will issue.

DONE this 22nd day of July, 2009.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE